# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4277

_____

| | | |
|---|---|---|
| Doreen A. Genosky, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| State of Minnesota; Department | * | |
| of Public Safety; Donald Davis, | * | |
| Commissioner of the Department | * | |
| of Public Safety, in his official | * | |
| capacity; Minnesota State Patrol; | * | Appeal from the United States |
| Michael Chabries, Chief of the | * | District Court for the |
| State Patrol, in his official capacity; | * | District of Minnesota |
| Lieutenant Thomas Fraser of the | * | |
| State Patrol, personally and | * | |
| individually; Lieutenant Lori Hodapp | * | |
| of the State Patrol, personally and | * | |
| individually, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  October 19, 2000

Filed:  March 30, 2001

_____

Before McMILLIAN, BOWMAN and LOKEN, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Doreen Genosky ("Genosky") appeals from a final order entered in the United States District Court for the District of Minnesota,[1] granting summary judgment in favor of the State of Minnesota, Lori Hodapp ("Hodapp"), and Thomas Fraser ("Fraser") (collectively "defendants") on her claims of gender-based discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; violation of equal protection rights under 42 U.S.C. § 1983 and the Fourteenth Amendment; conspiracy under 42 U.S.C. § 1985; and tortious interference with contract. Genosky v. State of Minnesota, No. 99-4277 (D. Minn. Sept. 27, 1999) (memorandum opinion and order) (hereinafter "slip op."). For reversal, Genosky argues that the district court erred in holding that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law on each of her claims. For the reasons stated below and pursuant to 8th Cir. R. 47B, we affirm.

Jurisdiction was proper in the district court under 28 U.S.C. §§ 1331, 1343. Jurisdiction is proper in this court under 28 U.S.C. § 1291. The notice of appeal was timely filed, in accordance with Fed. R. App. P. 4(a).

## I. **Background**

The district court's forty-eight page opinion describes in considerable detail the factual background of this case. The following is a summary of the facts as set forth in the district court's order. See slip op. at 2-26. Genosky went through the Minnesota State Patrol Training Academy ("the academy") and graduated fourth out of twenty-seven graduates. Upon graduation from the academy, Genosky was sworn in as a Minnesota State Trooper and immediately began her one-year probationary period. Kevin Daly ("Daly"), Genosky's Field Training Officer ("FTO"), was responsible for evaluating Genosky's performance during her initial months as an officer. In each

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

evaluation, he noted that she was "progressing satisfactorily" and recommended that she "advance to the next step" of training.  Addendum to Brief for Appellant at 50-51 (Minnesota State Patrol FTO Biweekly Summary ("Biweekly Summary"), Mar. 18, 1995 and May 7, 1995).  In his final report dated May 7, 1995, Daly commented on Genosky's strengths as follows:

> Doreen is doing well in all areas of her FTO training and I expect her to continue.  She has a great attitude and works hard.  She handled all situations we encounter in a calm professional manner.  When offered constructive criticism she accepts it and changes the behavior. . . . I expect her to be a leader in the station.

Slip op. at 4 (quoting Biweekly Summary,  May 7, 1995).

On May 8, 1995, Genosky began solo patrol.  Lieutenant Kutz ("Kutz") was Genosky's supervisor and was responsible for her monthly evaluations.  His evaluations of Genosky ranged from "performs satisfactorily" to "does not perform satisfactorily; however, has the ability to improve with experience and/or additional training."  Id. at 4-5.  In a monthly evaluation report dated  June 26, 1995, Kutz criticized Genosky for mishandling the following three incidents.  First, with respect to her handling of a stolen vehicle, Kutz indicated concern with the incomplete manner in which her report was written as well as her hesitancy to initiate action.  Second, with respect to her handling of a felony stop, Kutz noted that, while her subsequent police report was more thorough, Genosky continued to show a lack of assertiveness.  Third, with respect to her handling of a stalled truck, Kutz criticized her for having used poor judgment and, once again, showing a lack of assertiveness.  In that third incident, a garbage truck had broken down on a freeway ramp and was extending into traffic.  While Genosky diverted traffic by putting out triangles, Kutz also instructed her to order a state tow truck given the hazardous situation involved.  After the state tow truck was already en route, Genosky canceled it and waited 45 minutes for the driver's private tow to arrive.  See id. at 5-10.

Kutz reported additional incidents regarding Genosky's performance. In a supervisor's contact form dated May 24, 1995, Kutz reprimanded Genosky for the following incident. Genosky had stopped to assist Trooper Garvey ("Garvey") with a possible stolen vehicle situation. While Garvey was having an abandoned car towed, another car arrived at the scene. Genosky determined that the license of the owner of that car (Sheree Embery) had been suspended. Although the driver denied being the owner of the car, both troopers heard the passenger call her "Sheree" on several occasions. As Genosky was writing a citation for the driver in her squad car, the car sped away. Even though Kutz believed that both officers used "poor judgment," he reasoned that Garvey was only responsible for the abandoned car, whereas Genosky was responsible for the suspended license situation. See id. at 10-11.

Kutz later criticized Genosky in a supervisor's contact form dated June 26, 1995, for her mishandling of a stalled vehicle incident. Genosky had been on her way to respond to the call when she heard a message over the radio, which she misunderstood to mean that Troopers Mikulski and Kutz were at the scene. Believing that Mikulski and Kutz were already handling the accident, Genosky helped direct traffic upon arriving at the scene. When Mikulski and Kutz actually arrived, Genosky was reprimanded for not having taken care of the accident scene initially. See id. at 12-13.

While on patrol on August 16, 1995, Trooper Davis identified a vehicle with an expired registration, attempted to pull the car over, and proceeded to chase the car at high speeds when it fled. The chase ended with the vehicle slamming into the back of a truck, causing minor injuries. Genosky became involved when she went to the hospital to take the suspects' statements. Lieutenant Kutz gave Genosky a negative

evaluation for her role in the incident, yet did not criticize Davis.[2]  Kutz admonished Genosky in a trooper contact form for not throughly or adequately questioning the suspects and for failing to advise the suspects of their Miranda rights.  See id. at 13-15.

Following her monthly evaluation by Kutz, dated August 22, 1995, Genosky spoke with Captain Mengelkoch ("Mengelkoch") about her perceived unfair treatment. Kutz had again rated her performance as ranging from "performs satisfactorily" to "does not perform satisfactorily; however, has the ability to improve with experience and/or additional training."  Id. at 18.  Genosky could not recall whether she alleged that she had been treated unfairly as a result of her gender.  See id. at 18-19.  The parties agreed that Trooper Polansky and Sergeant Ewald ("Ewald") would each accompany her on one shift.  Ewald later concluded, based upon his observation of Genosky, that she "didn't want help" and that "she was reluctant to accept advice."  Id. at 19 (quoting affidavit of Robert Ewald at ¶¶ 5-8, 13).  Additionally, he opined that "Ms. Genosky had the basic knowledge to perform the job of a Trooper, but she wasn't able to apply this knowledge."  Id. at 20 (quoting affidavit of Robert Ewald at ¶ 12).

Kutz transferred to St. Cloud in the fall of 1995.  Acting as her temporary supervisor, Lieutenant Fraser noted several incidents regarding Genosky's performance in a supervisor's contact form dated September 23, 1995.  He reported that Genosky listed the incorrect date and time of arrest on a suspect's 36-hour hold form and that she had improperly completed a notice and order of revocation.  Fraser concluded the contact form with, "[w]atch for more common sense mental errors, or the inability to read, follow, and understand the basic forms of law enforcement or the basic elements of a crime."  Id. at 20-21.  On October 17, 1995, Lieutenant Fraser and Lieutenant Hodapp (Kutz's replacement) met with Genosky to review her performance and each previous incident which led to criticism.  They discussed with her their training plan,

_____

[2]A review board considered Trooper Davis's use of force and concluded that his conduct was not improper.  See slip op. at 33.

-5-

primarily consisting of extra ride-alongs, to address her perceived deficiencies. See id. at 20-21. In a supervisor's contact form regarding the meeting, Fraser reported that Gensoky had made improbable excuses, blamed others, and contradicted herself. He concluded that she was either lying or unable to communicate effectively. Id. at 22-23.

Three days after her meeting with Hodapp and Fraser, Genosky stopped a driver, checked his identification, and learned that his driver's license had been suspended. She informed him that she was going to issue him a ticket and have his car towed. She returned to her squad car, leaving the driver in his car with his keys. He fled the scene and Genosky followed. The chase ended when the driver collided with another car. Genosky was put on administrative leave immediately following the incident. See id. at 24-25.

On October 23, 1995, Mengelkoch decided at a weekly meeting with Lieutenants Fraser and Hodapp to terminate Genosky. He requested that Fraser and Hodapp generate a report supporting the termination. Because Hodapp did not have first-hand knowledge regarding most of the incidents, she summarized the opinions and comments of other officers upon which the termination would be based. See id. at 25-26.

On October 24, 1995, Mengelkoch met with Genosky and informed her that he was not going to recommend that she be certified with the state patrol. Genosky turned in her resignation the next day. See id. at 26-27.

Genosky filed the present action in federal district court alleging gender discrimination in her employment in violation of Title VII and 42 U.S.C. §§ 1983, 1985. Defendants moved for summary judgment, and the district court granted the motion as to each of Genosky's claims. The district court held that Genosky had not established a prima facie case of sex discrimination or retaliation and, even if she had, no disputed facts existed that could lead a jury to reasonably conclude that defendants'

actions were motivated by her gender. See id. at 47. Final judgment was entered for defendants, and Genosky timely appealed.

## II. Discussion

We review a grant of summary judgment *de novo*, and will affirm if the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23(1986); Lynn v. Deaconess Med. Ctr., 160 F.3d 484, 486 (8th Cir. 1998).

### A. Discriminatory Discharge

Genosky argues that the district court improperly dismissed her discriminatory discharge claim. Genosky asserts that defendants' records of her poor performance are inaccurate, and cannot be reconciled with her success at the academy or with Daly's favorable evaluations. Additionally, she alleges that male troopers were not evaluated as harshly as she for similar performance problems. Upon careful *de novo* review, we hold that the plaintiff has produced no evidence to establish a genuine issue that defendants' proffered justifications for termination were a pretext for discrimination. In sum, we agree with the district court that "[Genosky] cannot meet her ultimate burden of demonstrating that her termination was the result of discrimination rather than numerous legitimate factors regarding her performance." Slip op. at 34.

### B. Hostile Work Environment

Plaintiff Genosky next argues that both Kutz's and Fraser's gender-based discrimination created a hostile work environment in violation of Title VII. She alleges that Kutz harassed her by "humiliating her in front of troopers and citizens; . . . accusing her of performance problems based on a male trooper's word; and documenting untruths in her performance evaluations." Appellant's Brief at 54. Additionally, Genosky contends that Fraser abused the review process as a means to "insult, accuse and intimidate" her. Id. at 55. Genosky has not raised a genuine issue

of material fact that this alleged adverse treatment by defendants was due to her gender, rather than repeated performance problems. See Hathaway v. Runyon, 132 F.3d 1214, 1221 (8th Cir. 1997) (noting that to succeed on a hostile work environment claim, a "plaintiff must show that the conduct was discriminatory in nature and that she was singled out for such treatment on the basis of her membership in a protected category under the statute.").

## C.  Retaliation

Genosky further claims that defendants retaliated against her because she complained of sex discrimination.  We agree with the district court's determination that Genosky has not produced evidence sufficient to raise a genuine issue of material fact regarding the alleged retaliation.  As noted in the district court's opinion, "[a]lthough Plaintiff Genosky complained about unfair treatment, she cannot establish that she complained about unlawful discriminatory treatment.  Thus, the Plaintiff cannot establish that she opposed an unlawful employment practice, and cannot meet her burden of demonstrating that she engaged in statutorily protected conduct."  Slip op. at 40.

## D.  42 U.S.C. § 1983

In addition to her Title VII claims, Genosky alleges that the district court erred by dismissing her equal protection claims against Hodapp and Fraser.  She claims that defendants "engag[ed] in intentional conduct designed to impede the plaintiff's career advancement."  Appellant's Brief at 44.  She specifically points to Fraser's critical evaluation as evidence of his sexual discrimination.  Hodapp, according to Genosky, cooperated "in promoting and furthering Fraser's ill motives."  Id.  As discussed previously, Genosky has failed to create a genuine issue of material fact on her claim of intentional, gender-based discrimination.

## E.  42 U.S.C. § 1985

Genosky also asserts that Hodapp and Fraser conspired to deprive her of her civil rights in violation of 42 U.S.C. § 1985. We agree with the district court that Genosky has not set forth any "evidence in the record from which a jury could reasonably conclude that Lieutenant Fraser and Lieutenant Hodapp conspired to deprive the Plaintiff of her civil rights" or that they were motivated by a "class-based invidiously discriminatory animus." Slip op. at 45 (citing Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996)).

### F. Tortious Interference with Contract

Lastly, Genosky claims that Fraser and Hodapp intentionally interfered with her employment contract with the State of Minnesota. Genosky did not set forth evidence sufficient to create an issue of material fact regarding the defendant's motivation for their conduct. Without evidence which could allow a jury to conclude that their actions were a result of improper motives, she cannot overcome defendants' motion for summary judgment.

### III. Conclusion

For the reasons stated, the judgment of the district court is affirmed. See 8th Cir.R. 47B.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.